UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LARRY PIERI, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>UNIRUSH LLC, a Delaware limited liability company,<br><br>*Defendant.* | CASE NO.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Larry Pieri ("Pieri") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant UniRush LLC, ("Defendant" or "UniRush"), to stop its practice of sending text messages using an automatic telephone dialing system to the cellular telephones of consumers nationwide without their prior express consent, and to obtain redress for all persons injured by its conduct. Plaintiff, for his complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

**NATURE OF THE ACTION**

1. Defendant UniRush is a provider of reloadable prepaid debit cards and related financial services throughout the United States.

2. The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), prohibits companies, such as UniRush, from sending text messages using an automatic telephone dialing system ("ATDS" or "autodialer") to cellular telephones without first obtaining the recipients' consent. Defendant has violated, and continues to violate, the TCPA by sending text messages to

cellular telephone subscribers who have obtained a recycled or reassigned cellular telephone number and who have not consented to receive autodialed such text messages, and by continuing to send them text messages after they have expressly told UniRush to stop doing so.

3. By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the cost of the text messages, and the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages. It also includes the intentional interference with Plaintiff and the other Class members use and enjoyment of their cellphones, including the related data, software, and hardware components, and the resulting wear and tear to the software and hardware components of the phones.

4. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease placing autodialed text messages to cellular telephones without the consent of the recipient, as well as an award of statutory damages to the members of the putative Class under the TCPA, together with costs.

## PARTIES

5. Plaintiff Larry Pieri is a Minnesota resident living in Anoka, Minnesota.

6. Defendant UniRush is a Delaware limited liability company headquartered in Cincinnati, Ohio. Defendant regularly does business throughout this District and throughout the United States.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute for which there is federal question jurisdiction.

8.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does significant business in this District and the state of Minnesota, and because the wrongful conduct giving rise to this case occurred in this District.  Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

7.      As mentioned above, UniRush is leading provider of reloadable prepaid debit cards and related financial services throughout the United States.  In order to notify its customers of transactions they make using their UniRush prepaid debit cards, UniRush sends consenting customers text messages to their cellular telephone numbers from a short code using an ATDS:[1]



8.      While, generally, UniRush appears to obtain consent from its customers requesting text messages relating to their accounts, UniRush does nothing to avoid continuing to send account related messages to cellular telephone numbers associated with UniRush cards after those cardholders have disconnected their cellular service or changed their numbers, and the numbers have been reassigned to different consumers that have no relationship with UniRush

---

1 https://www.rushcard.com/mobile-app-text-alert

3

and that have not consented to receive text messages from it.

9. The mobile marketing industry is acutely aware of cellular number recycling and, in particular, the risk associated with sending autodialed text messages to non-consenting recycled numbers. In fact, numerous commercially available services exist to help companies engaged in mass texting, such as Defendant, identify recycled numbers and non-consenting cellular subscribers in real-time, including companies such as Neustar, Experian, Early Warning, Idiology, and Infutor.

10. Notwithstanding the obvious lack of consent associated with recycled numbers, Defendant fails to take the necessary steps to ensure that its autodialed text messages are placed only to consenting recipients, forcing new subscribers of reassigned cellular telephone numbers to incur the cost and bother of receiving Defendant's autodialed text messages. In fact, Defendant knows, and consciously disregards the fact, that its autodialed and/or prerecorded calls to these cellular subscribers are unauthorized.

## FACTS SPECIFIC TO PLAINTIFF LARRY PIERI

11. In or around February of 2017, Plaintiff Pieri obtained a new cellular telephone number and service from TracFone. Towards the end of November 2017, Plaintiff started receiving text message notifications from UniRush from short code 697-874. However, Plaintiff has never had a relationship with UniRush, has never provided UniRush his cellular telephone number, and has never consented to received autodialed text messages from UniRush.

12. The cellular phone provider that Plaintiff Pieri uses is TracFone. As part of his plan with TracFone, Plaintiff is charged $0.30 for every text message he receives.

13. Defendant has been texting Plaintiff approximately once a day since the end of November 2017. The text messages are all notifications related to a UniRush card. For

example, on February 15, 2018, Plaintiff was sent a text message from Defendant using short code 697-874 stating, "Rushcard**7816 available balance is: $0.00, at 8:52 AM EST 2/15/2018 Text STOP to end."

14. Plaintiff Pieri is charged $.30 per unsolicited text message he receives from UniRush. As a result, Plaintiff called Defendant on their customer help line number 866-787-4227 on January 5, 2018 to demand that UniRush stop texting him. He was connected with an agent named "Citti" who assured him that the text messages would cease. Defendant also attempted to stop the incoming text messages by sending an opt out text message to UniRush's short code.

15. Despite the assurance from one of Defendant's representative and Plaintiff's own attempts, the text messages did not stop. Plaintiff received over 30 additional text messages after expressly opting out (even though he had never opted in).

16. On information and belief, UniRush, or others acting on its behalf, have sent these autodialed text messages to thousands of members of the putative Class. To the extent the text messages were sent on UniRush's behalf to telephone numbers formerly associated with UniRush customers, UniRush provided the third-party access to its records, authorized use of its trade name, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

17. In sending the unsolicited text messages at issue, UniRush, or a third party acting on its behalf, utilized an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages' auto-

populated and otherwise generic content, and that they were sent from a short code, which is consistent with the use of an automatic telephone dialing system to send text messages.

## CLASS ALLEGATIONS

18.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the following Classes:

> **Autodialed No Consent Class**: All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone, (3) using an autodialer, and (4) for whom Defendant claims (a) they obtained consent in the same manner as Defendant claims they supposedly obtained consent to text message Plaintiff, or (b) they did not obtain consent.

> **Autodialed Stop Class**: All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone, (3) using an autodialer, (4) after requesting that Defendant stop sending them text messages.

19.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

20.     **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent text messages to tens of thousands of consumers who

6

fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

21. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

22. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

23. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant used an ATDS;

    (b)    Whether Defendant's conduct violated the TCPA;

    (c)    Whether Defendant had consent to call members of the Autodialed No Consent Class; and

    (d)    Whether Defendant failed to abide by Class members' instructions to stop sending them text messages.

24. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
Violation of the TCPA, 47 U.S.C. § 227
(On behalf of Plaintiff and the Autodialed No Consent Class)

25. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

26. Defendant sent unsolicited and unwanted text messages to telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class—without their consent—in an effort to notify them of recent transactions.

27. Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

28. By sending unsolicited text messages to Plaintiff and members of the Autodialed No Consent Class's cellular telephones without prior express consent using an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

29. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class suffered actual damages, and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to a minimum of $500 in damages for each such violation of the TCPA. Should the

Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

### SECOND CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Autodialed Stop Class)

30. Plaintiff incorporates by reference paragraphs 1-24 as if fully set forth herein.

31. Defendant sent unsolicited and unwanted text messages to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephones after they had requested that Defendant stop texting them.

32. Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called and/or texted using a random or sequential number generator.

33. By sending unsolicited text messages to Plaintiff and other members of the Autodialed Stop Class's cellular telephones using an automated telephone dialing system after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(B).

34. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Class suffered actual damages, and, under Section 227(b)(3)(B), are each entitled to a minimum of $500 in damages for each such violation of the TCPA. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pieri, individually and on behalf of the Classes as defined above, prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff Pieri as the representative of the Class, and appointing his counsel as Class Counsel;

B.  An award of actual and statutory damages to be paid into a common fund for the benefit of the Class;

C.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

D.  A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.  An injunction prohibiting Defendant from using, or contracting for the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express consent to receive calls made with such equipment;

F.  An award of costs; and

G.  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims.

Respectfully submitted,

Dated: May 14, 2018

**LARRY PIERI,** individually and on behalf of all others similarly situated,

By: /s/ Karin Ciano
One of Plaintiff's Attorneys

Karin Ciano
Bar No. MN 0343109
Karin Ciano Law PLLC
310 Fourth Avenue South Suite 5010
Minneapolis, MN 55415
Phone: (512) 367-7135
Fax: (612) 437-4440
Fax: (612) 437-4440
Email: Karin@karincianolaw.com

Stefan Coleman, Esq.*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
law@stefancoleman.com
(877) 333-9427

Avi R. Kaufman*
Kaufman P.A.
kaufman@kaufmanpa.com
400 NW 26th Street
Miami, Fl 33127
Phone: (305) 469-5581

* *Pro hac vice* application to be filed.

*Attorneys for Plaintiff and the putative Class.*